UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC WENZEL, ANNIE ALLEY, and THELMA WENZEL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:16 CV 27 DDN ) |
| CITY OF BOURBON, MISSOURI, and CARL STORM, | ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM**

This action is before the court on the motions of (a) plaintiffs Eric Wenzel, Annie Alley, and Thelma Wenzel for partial summary judgment against defendant Carl Storm on Count 1 (ECF No. 35); (b) defendant City of Bourbon for summary judgment against plaintiffs on Counts 3, 4, and 5 (ECF No. 58); and (c) defendant Carl Storm for summary judgment against plaintiffs on Counts 1, 3, 4, and 5 (ECF No. 60). The court heard oral argument on the motions on March 31, 2017.

Plaintiffs seek relief in five counts:

Count 1: against defendant Storm under 42 U.S.C. § 1983 for use of unconstitutionally excessive force that resulted in the death of plaintiffs' decedent, Gary Wenzel on March 5, 2014;

Count 2 against defendant City of Bourbon was dismissed by the court (ECF No. 17);

Count 3 against both defendants for wrongful death under the law of Missouri;

Count 4 against both defendants for assault under the law of Missouri; and

Count 5 against both defendants for battery under the law of Missouri.

The court has subject matter jurisdiction over Count 1 pursuant to 28 U.S.C. §§ 1331 and 1343(3), and supplemental subject matter jurisdiction over Counts 3, 4, and 5 pursuant to 28 U.S.C. § 1367(a).

## I. Legal standard for summary judgment

Summary judgment is proper "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing. *Id.*

Courts must grant summary judgment when the pleadings and the proffered evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp*, 477 U.S. at 322. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (internal citation omitted). Stated another way, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. *Scott*, 550 U.S. at 379-80.

The nonmoving party must proffer "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). If the nonmoving party fails to proffer substantial evidence of an essential element of a claim, summary judgment is appropriate on that claim because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *St. Jude Med., Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 595 (8th Cir. 2001).

On Count 1 the parties have filed cross-motions for summary judgment. "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

## II. Evidentiary issues

When supporting or disputing statements of material fact offered to support a motion for summary judgment, the opposing party may object that such a statement is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Moore v. Indehar*, 514 F.3d 756, 761 (8th Cir. 2008) (ruling hearsay evidence properly not considered on motion for summary judgment). Plaintiffs argue that defendant Storm's statements that he had heard about decedent Gary Wenzel's background and attitude before the March 5, 2014, incident, are inadmissible because they are hearsay and self-serving. (ECF No. 62 at ¶¶ 10, 11, 12, 16, 24, 25, 34).

The court disagrees with plaintiffs. The warnings defendant Storm states he had received about Wenzel (ECF Nos. 50, 61, Ex. 1 at ¶¶ 10, 11, 12, 16, 24, 25) would be hearsay if they were offered for the truth of the facts stated in the warning statements. *See* Fed. R. Evid. 801(c). However, these statements are not hearsay when used to prove their effect on defendant Storm. *See United States v. Wright,* 739 F.3d 1160, 1170 (8th

Cir. 2014); *see also Bady v. Murphy-Kjos*, 628 F.3d 1000, 1002-03 (8th Cir. 2011) (holding that information provided to an officer about a suspect is not hearsay when only offered to show "what the officers knew, or thought they knew, at the time of the arrest."). Accordingly, paragraphs 10-12, 16, and 24-25 are not inadmissible hearsay statements. [1]

As to plaintiffs' objections that these statements were self-serving, the court is not persuaded that they are thereby inadmissible or insufficient to establish a material fact. Plaintiffs rely on the Eighth Circuit holding that: "we cannot draw favorable inferences from [a party's] unsupported, self-serving affidavit stating his subjective views." *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). However, the *Conolly* court was referring to a party who was attempting to explain how he understood the terms of a contract, when the question on summary judgment was whether there was an objective manifestation of an intent to be bound. *Id.* This holding is inapplicable here, where the question is not purely objective, but also subjective.

Federal Rule of Civil Procedure 56(c) provides that affidavits may be considered in ruling on a motion for summary judgment, so long as they are "made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(c). Defendant Storm's affidavit (ECF No. 50) only goes to events of which he has personal knowledge. He sets forth facts that are admissible in evidence as non-hearsay statements related to his state of mind at the time of the event. (ECF No. 50). He is competent to testify about his own state of mind.

The statements in question, other than at ¶ 34 previously mentioned, may be properly considered on the motions for summary judgment.

---

[1] The toxicology report described in ECF No. 61, Ex. 1 at ¶ 34 is irrelevant, and thus not admissible, to support Storm's summary judgment statements about his knowledge during the March 5, 2014, incident. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). The report's contents are irrelevant, because it was prepared after the incident.

### III. Undisputed facts

Unless otherwise noted, the parties do not dispute the following facts.[2] On March 5, 2014, defendant Carl Storm was employed as a police officer for the Bourbon Police Department in Bourbon, Missouri. (ECF Nos. 36 at ¶ 6; 49 at ¶ 6; 56 at ¶ 1; 59 at Ex. 1, ¶ 1). On that day, Storm was in uniform and driving a fully marked City of Bourbon Police Department police car. (ECF Nos. 61, Ex. 1 at ¶¶ 1-3; 62 at ¶ 1). The police car Storm was driving was equipped with an in-car video system. (ECF Nos. 61, Ex. 1 at ¶ 4; 62 at ¶ 4). The audio portion of the in-car video system only activates when it is pulled from its charging cradle. (ECF Nos. 61, Ex. 1 at ¶ 6; 62 at ¶ 6). The video was activated and recording during the incident in question, but there is no audio recording of the incident. (ECF Nos. 61, Ex. 1 at ¶¶ 5, 7; 62 at ¶¶ 5, 7).

Earlier in the day, defendant Storm performed a traffic stop of Shawn Wenzel, a relative of Gary Wenzel, resulting in the towing of Shawn's vehicle. (ECF Nos. 36 at ¶¶ 9-10; 49 at ¶¶ 9-10). Defendant Storm had just resumed patrolling the streets when he observed Gary Wenzel drive past him in the opposite direction. (ECF Nos. 36 at ¶¶ 7-8; 49 at ¶¶ 7-8). Storm had previously been informed by another police department that Wenzel was driving with improper tags, so he turned his vehicle around to investigate. (ECF Nos. 36 at ¶¶ 11, 13; 49 at ¶¶ 11, 13, 48-53; 61, Ex. 1 at ¶ 15; 62 at ¶ 15).[3] The

---

[2] The facts are taken from plaintiffs' Statement of Uncontroverted Material Facts (ECF No. 36) in support of their Motion for Partial Summary Judgment, defendant Storm's Amended Statement of Uncontroverted Material Facts (ECF No. 49) in support of his Response to Plaintiff's Motion for Partial Summary Judgment, plaintiff's Response to Defendant Carl Storm's Additional Statement of Uncontroverted Material Facts (ECF No. 56), defendant Bourbon's Supplemental Statement of Uncontroverted Material Facts (ECF No. 59) in support of its Motion for Summary Judgment, defendant Storm's Supplemental Statement of Uncontroverted Material Facts (ECF No. 61) in support of his Motion for Summary Judgment, plaintiffs' Response to defendants' supplemental statements of fact (ECF No. 62), and defendant Storm's Reply to plaintiff's response (ECF No. 64).

[3] For clarity, the court refers to defendant Storm's supplemental statement of facts in ECF No. 49 using subsequent, sequential numbering (*e.g.,* Paragraph 1 of the supplemental

moment when Storm activated his lights is disputed. (ECF Nos. 36 at ¶ 11; 49 at ¶ 11). Shortly after Storm turned to follow Wenzel, Wenzel failed to stop at a stop sign and sped away. (ECF Nos. 36 at ¶ 12; 49 at ¶ 12). The chase continued for ten to eleven minutes, but the parties dispute at what points, if any, the cars were driving at "high speeds" during this chase. (ECF No. 49 at ¶ 56; 56 at ¶ 19). A visual observation of Storm's dashcam video recording of the pursuit clearly depicted Wenzel driving in the opposite direction lane, of the two-lane road, on more than one occasion.[4] The parties dispute the cause of the stop, but Wenzel's car eventually stopped in a ditch. (ECF Nos. 36 at ¶ 14; 49 at ¶ 14).

When Wenzel's vehicle stopped, Storm remained in his patrol car with his door open, parked a few car lengths behind Wenzel's vehicle. (ECF Nos. 36 at ¶ 16; 49 at ¶ 16). Wenzel exited his vehicle and walked swiftly toward Storm's patrol car. (ECF Nos. 36 at ¶ 15; 49 at ¶ 15; Pl. Ex. 3; Def. Ex. 4). The parties dispute what Storm observed at this time. (ECF Nos. 36 at ¶¶ 17-19; 49 at ¶¶ 17-19). Plaintiffs assert that as Wenzel approached Storm's vehicle, Wenzel's arms were swinging and his hands were in plain view. (ECF Nos. 36 at ¶¶ 17-19). They assert that it was clearly visible to Storm that Wenzel's hands were empty, and that Wenzel did not in fact have any weapons in his hands. (*Id.*). At Storm's deposition, he testified that while he could not clearly see Wenzel's hands as he approached, he did not see any weapons, and Wenzel's hands were down at his sides with palms backward. (ECF No. 36, Ex. 2 at ¶¶ 5-14).

Storm asserts that as soon as he came to a stop, he noticed that Wenzel was already out of his vehicle and rapidly approaching him. (ECF No. 49 at ¶ 65). Storm asserts that he dropped the radio on the seat of his vehicle, attempted to stand up all the way, and, drawing his weapon, gave commands to Wenzel to stop and show his hands.

---

facts is re-labeled Paragraph 38, to continue from the last paragraph of plaintiffs' statement of facts, which was Paragraph 37). (ECF No. 36).

[4] During the hearing on the instant motions, with counsel for all parties present but off the record, the court viewed video recording of Storm's pursuit of Wenzel, Def. Ex. 4.

(ECF No. 49 at ¶ 66). Wenzel continued to approach without showing his hands. (ECF No. 49 at ¶¶ 67-70).

The parties do not dispute that as Wenzel approached, Storm, standing behind his open vehicle door, fired three gunshots at Wenzel, who was struck in the head, chest, and lower left abdomen. (ECF Nos. 36 at ¶¶ 20-22; 49 at 20-22). Storm believed he shot Wenzel in the side of his head, while plaintiffs assert it was to the back of the head. (ECF Nos. 36 at ¶¶ 24-25; 49 at ¶¶ 24-25). Wenzel died that day as a result of the gunshot wounds. (ECF Nos. 36 at ¶ 23; 49 at ¶ 23).

At the time of the incident, it was daylight, and there were no other people present at the location where the shooting occurred. (ECF Nos. 36 at ¶¶ 28, 37; 49 at ¶¶ 28, 37). Storm had on his person a pistol, a baton, and a pepper spray device. (ECF Nos. 36 at ¶ 29; 49 at ¶ 29). Although the pepper spray and baton were on his duty belt, Storm did not use either of them on Wenzel before shooting him. (ECF Nos. 36 at ¶¶ 30-33; 49 at ¶¶ 30-33). At this time Storm was familiar with the use of force continuum policy. (ECF Nos. 36 at ¶ 35; 49 at ¶ 35).

Storm asserts that several sources had informed him that Wenzel was a dangerous individual. During the earlier traffic stop of Shawn Wenzel, Shawn allegedly warned Storm to "be careful," because Gary Wenzel "is not going to jail." (ECF Nos. 49 at ¶ 44; 61, Ex. 1 at ¶ 10; 62 at ¶ 10). Gary Wenzel's brother, Ronnie, also warned Storm that Wenzel was dangerous. (ECF Nos. 49 at ¶ 45; 61, Ex. 1 at ¶ 11; 62 at ¶ 11). Storm was also aware of an active investigation by the Bourbon Police Department into Gary Wenzel's methamphetamine use and distribution. (ECF Nos. 61, Ex. 1 at ¶ 12; 62 at ¶ 12). Storm had previous personal and professional interactions with Gary Wenzel, and he was aware that Wenzel had previously assaulted another officer and had physical altercations with other officers. (ECF Nos. 49 at ¶¶ 46-49, 60; 61, Ex. 1 at ¶ 25; 62 at ¶ 25). Storm asserts that he had been previously provided information that Wenzel had fled another police department and managed to elude them. (ECF Nos. 49 at ¶ 51; 61, Ex. 1 at ¶ 16; 62 at ¶ 16). During the chase, Storm was informed by dispatch that Wenzel

was aggressive and known to be violent towards law enforcement. (ECF Nos. 49 at ¶ 59; 61, Ex. 1 at ¶¶ 23-24; 62 at ¶¶ 23-24).

At all times relevant to this lawsuit, the City of Bourbon, Missouri, participated in and continues to participate in the statutorily-created Missouri Public Entity Risk Management Fund ("MOPERM"). (ECF No. 59, Ex. 1 at ¶ 2). Bourbon has not procured any liability insurance other than its participation in MOPERM, which participation's Memorandum of Coverage is set out in defendant Bourbon's Exhibit 3. (ECF No. 59, Ex. 1 at ¶ 2, Ex. 3).

For purposes of plaintiffs' motion, the parties agree that Gary Wenzel is survived only by his children, plaintiffs Eric Wenzel and Annie Ally, and his mother, plaintiff Thelma Wenzel. (ECF Nos. 36 at ¶¶ 1-5; 49 at ¶¶ 1-5).

## IV.   Count 1 against defendant Carl Storm

Count 1 seeks relief under 42 U.S.C. § 1983 and alleges defendant Storm used constitutionally excessive, deadly force against decedent Gary Wenzel. This claim implicates Wenzel's Fourth Amendment right to be secure against unreasonable seizures. U.S. Const. Amend. IV; *Graham v. Connor*, 490 U.S. 386, 395 (1989).

In determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396–97 (citations omitted). The test for reasonableness "requires careful attention to the facts and circumstances of each particular case," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted).

This analysis must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citations omitted). It must be examined "from the perspective of the facts known to the officer at the time of the incident," *Nelson v. Cty. of Wright*, 162 F.3d 986, 990 (8th Cir. 1998), and allow for the

fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (citations omitted).

The reasonableness analysis is an objective inquiry: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citations omitted). That is, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citations omitted).

Plaintiffs argue that they are entitled to judgment of liability as a matter of law, because Storm fatally shot Wenzel, who was unarmed. (ECF No. 37). Defendant Storm counters that his use of force was reasonable and he is, moreover, entitled to qualified immunity. (ECF No. 44).

Issues of fact preclude summary judgment at this time. The parties rely on the same deposition testimony, defendant Storm's, for contrary assertions about the facts leading up to the shooting and Storm's memory of what occurred, particularly in terms of how Wenzel moved and to what extent his hands were visible to Storm at the time. A determination of what Storm perceived and considered requires a credibility determination that cannot be made at the summary judgment stage. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (emphasis added). Summary judgment on Count 1 cannot be granted to plaintiffs.

Defendant Storm argues he is entitled to qualified immunity. "Qualified immunity protects a government official from liability in a Section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). Qualified immunity depends upon both: (1) whether the officer's actions violated

a constitutional right, and (2) whether that right was clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (8th Cir. 2001).

The Eighth Circuit takes a broad view of the "clearly established" inquiry, allowing consideration of "all available decisional law including decisions of state courts, other circuits, and district courts." *Hayes v. Long*, 72 F.3d 70, 73-74 (8th Cir. 1995). The law can be clearly established by "a consensus of cases of persuasive authority such that a reasonable officer could not have believed his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The purpose of the qualified immunity inquiry "is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). It is only if the officer's mistake as to what the law requires is reasonable that the officer is entitled to the immunity defense. *Id.* The "very action in question" need not have been previously held to be unlawful; rather, its unlawfulness must be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Cases relating to the constitutionality of the use of force are highly fact driven. While an officer is not constitutionally required to wait until he actually sees a weapon before employing deadly force against an individual, the visibility of the person's hands is an important factor. *See, e.g., Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001). The Sixth Circuit found deadly force unreasonable on an armed suspect when, after shots were reportedly fired in his home, the police entered his home unannounced, someone yelled "I've got something for your ass" and closed the cylinder on a revolver, and then the armed suspect walked toward the front door with his hands at his side. *Dickerson v. McClellan*, 101 F.3d 1151, 1163 (6th Cir. 1996). The Sixth Circuit, however, found deadly force to be reasonable on an unarmed suspect when that suspect obscured both hands from view and looked as if he was reaching for a weapon. *Thompson*, 257 F.3d at 899. The Eleventh Circuit found deadly force was reasonable when a man with a gun was not clearly visible in his parked vehicle. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167-68 (11th Cir. 2009).

In this case, the disputed issues of fact that preclude summary judgment on plaintiffs' claim also preclude summary judgment on defendant's qualified immunity defense. This court acknowledges that "[i]mmunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 233 (1991). While this rule diminishes the jury's role in qualified immunity cases, however, it does not entirely abolish it. *Id.* (noting immunity "*ordinarily* should be decided by the court") (emphasis added). In this case, disputed facts are material to whether Storm acted in an objectively reasonable manner in view of the existing law and facts available to him.

Accordingly, both motions for summary judgment on Count 1 are denied.

## V. Counts 3, 4, and 5 against defendant City of Bourbon

Defendant City of Bourbon has moved for summary judgment on Counts 3, 4, and 5 on the ground it is entitled to sovereign immunity. (ECF Nos. 58-59). Sovereign immunity shields a municipality from liability for actions taken as part of its governmental functions in all but four circumstances. *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. Ct. App. 2009) (stating the four: (1) where a public employee negligently operates a motor vehicle in the course of his employment; (2) where the injury is caused by the dangerous condition of the municipality's property; (3) where the injury is caused by the municipality performing a proprietary function, not a governmental function; and (4) to the extent the municipality has procured insurance). Only the insurance coverage exception applies in this case. The fourth exception waives sovereign immunity "to the extent a municipality has procured insurance," that is, "up to but not beyond the policy limit and only for acts covered by the policy." *Id.* (citations omitted).

Plaintiffs have alleged that "[a]t all relevant times, . . . Bourbon had purchased and had in effect a policy of insurance to insure itself against claims or causes of action for damages caused by city employees engaged in government functions, including those as described [in the complaint]." (ECF No. 1 at ¶ 15). This, plaintiffs have argued,

constituted a waiver of sovereign immunity under Mo. Rev. Stat. §§ 71.185 and 537.610. (*Id.* at ¶ 16).

The City of Bourbon admits it participates in the Missouri Public Entity Risk Management Fund ("MOPERM") (ECF No. 59, Ex. 1 at ¶ 2), but states it has not procured any other liability insurance. (ECF No. 59, Ex. 1 at ¶ 2, Ex. 3). It argues that its liability is limited by the terms of its MOPERM insurance policy. The only Missouri-law claims Bourbon's MOPERM policy covers are claims related to the operation of a motor vehicle and a municipality's dangerous condition of property. (ECF No. 59 at 1-3, Ex. 3 at 3); Mo. Rev. Stat. §§ 537.600, 537.700, *et seq.*

The parties do not dispute that Bourbon's MOPERM policy did not and does not cover the acts at issue in this case. (ECF No. 59 at 1-3, Ex. 3 at 3). The Eighth Circuit has held that participation in MOPERM does not waive sovereign immunity for other claims based on Missouri law. *Epps v. City of Pine Lawn*, 353 F.3d 588, 595 (8th Cir. 2003).

Accordingly, the City of Bourbon is entitled to sovereign immunity on plaintiffs' Counts 3, 4, and 5 state-law claims of wrongful death, assault, and battery.

### **VI. Counts 3, 4, and 5 against defendant Storm**

Defendant Storm has moved for summary judgment on plaintiffs' three state-law claims, invoking Missouri's official immunity defense and its public duty doctrine. (ECF Nos. 60-61).

Official immunity defense

The official immunity defense applies to both negligence and intentional torts. *DaVee v. Mathis,* 812 S.W.3d 816, 827 (Mo. Ct. App. 1991) (applying official immunity to bar an assault claim). It is a "judicially-created doctrine" that protects public employees from liability for discretionary, as opposed to "ministerial," acts committed during the course of their official duties. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). "A discretionary act requires the exercise of reason in the

adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id*. A ministerial act, on the other hand, "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id*.

A police officer's investigation, pursuit of, and shooting of a suspect involves a series of discretionary, not ministerial, acts. *See, e.g., Dalia v. United States*, 441 U.S. 238, 257 (1979) (holding that a police officer's execution of a search warrant is a discretionary act); *DaVee*, 812 S.W.3d at 827 (same); *see also Estate of Snyder v. Julian*, 789 F.3d 883, 886-87 (8th Cir. 2015). Defendant Storm has established that he was performing discretionary acts in deciding to investigate, then pursue, then shoot Wenzel.

However, as plaintiffs argue, the official immunity defense is not available where the officer acted with malice, in bad faith, or with conscious wrongdoing. *Blue v. Harrah's North Kansas City, LLC,* 170 S.W.3d 466, 479 (Mo. Ct. App. W.D. 2005). The Supreme Court of Missouri described malice and bad faith thus:

> A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.
>
> Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986); *see also Estate of Snyder*, 789 F.3d at 887. As described above, the parties' proffers of evidence, dependent as they are on the jury's credibility determinations, preclude summary judgment on the official immunity defense. *Julian*, 789 F.3d at 886-87.

Public duty doctrine

The Missouri public duty doctrine provides that "a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Estate of Snyder*, 789 F.3d 888-89 (quoting *Southers,* 263 S.W.3d at 611). This doctrine relates only to negligence claims, not intentional torts, and so would only apply to plaintiffs' wrongful death claim. *Green v. Missouri Department of Transportation*, 151 S.W.3d 877 (Mo. Ct. App. 2004) (explaining that the public duty doctrine is not an affirmative defense but simply defines the duty a public employee defendant owes a plaintiff). However, the public duty doctrine is similarly inapplicable to acts performed by a public employee "in bad faith or with malice." *Southers*, 263 S.W.3d at 612.

As with the official immunity defense, it is for the jury to determine whether Storm acted in a manner that allows the application of the public duty doctrine, or not.

## VII.  Conclusion

For the reasons stated above, on Count 1 the cross-motions of plaintiffs and defendant Storm for summary judgment are denied; on Counts 3, 4, and 5 the motion of defendant City of Bourbon for summary judgment is granted; and on Counts 3, 4, and 5 the motion of defendant Carl Storm for summary judgment is denied. An appropriate Order is issued herewith.

    /S/   David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 13, 2017.